UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLAN DAVID KRENITSKY,<br><br>Plaintiff,<br><br>v.<br><br>KIRSCH, et al.,<br><br>Defendants. | No. 2:18-cv-0690 WBS DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding through counsel with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when their failure to treat an eye infection resulted in the loss of his eye.

On January 28, 2022, this court held a hearing using Zoom videoconferencing on defendants' motions for summary judgment. Attorney Greg Mullanax appeared for plaintiff. Attorney Martin Kosla appeared for defendant Kirsch. Deputy Attorney General John Bridges appeared for defendants Jackson and Martinez. After considering the parties' briefs, the record, and the arguments of counsel, this court will recommend defendants' motions for summary judgment be denied.

////

# BACKGROUND

This case is proceeding on plaintiff's complaint filed March 29, 2018. (ECF No. 1.) Plaintiff's allegations are as follows. On June 5, 2017, he fell and sustained an eye injury, which caused pain and vision loss. Over the next two and a half months, each defendant - Registered Nurse Martinez, Doctor Jackson, and Optometrist Dr. Kirsch – saw him several times. None of them treated his injury properly or with urgency and none of them referred him to an ophthalmologist. On August 24, 2017, plaintiff was taken by ambulance to the University of California, Davis, ("UC Davis") Medical Center. There, he saw an ophthalmologist. He was diagnosed with an eye infection that resulted in the loss of his eye. On screening, this court found plaintiff stated Eighth Amendment claims that each defendant was deliberately indifferent to plaintiff's serious medical needs.

Plaintiff seeks compensatory and punitive damages and an injunction requiring defendants to provide surgery to repair his deformed eyelid, other eye treatment, and treatment for his headaches.

On November 5, 2021, defendant Kirsch filed a motion for summary judgment and a request for judicial notice. (ECF Nos. 87, 88.) Plaintiff filed an opposition (ECF No. 92) and Dr. Kirsch filed a reply (ECF No. 94). On November 8, 2021, defendants Martinez and Jackson filed a motion for summary judgment. (ECF No. 89.) Plaintiff filed an opposition (ECF No. 93) and Nurse Martinez and Dr. Jackson filed a reply (ECF No. 97). In both motions, defendants argue that the undisputed facts show that plaintiff cannot succeed on the merits of his claims.

# MOTIONS FOR SUMMARY JUDGMENT

**I. Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff

members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746.  His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

////

4

## II. Eighth Amendment Legal Standards

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson, 501 U.S. at 298-99.

For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

////

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330,

////

332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**III. Discussion**

The following facts are undisputed and are relevant to both summary judgment motions.[1]

- At all relevant times, plaintiff was an inmate at Mule Creek State Prison ("MCSP").
- Plaintiff was seen at the prison's Triage and Treatment area on August 24, 2017[2] on an urgent basis. A registered nurse found that plaintiff's left eye was severely red, he was unable to open it, and it was completely cloudy. According to the record of that exam, plaintiff told staff that he suffered a left eye injury two months previously and that his pain was 7 out of 10. (ECF No. 89-2 at 38-40.)
- Plaintiff's records from the UC Davis Medical Center show the following:

  1. Plaintiff was taken by ambulance to the UC Davis Medical Center emergency department on August 24. Upon admission, it was noted that plaintiff's left eye was "Positive for photophobia, pain, discharge, and visual disturbance." (ECF No. 92-13 at 158, 161.)

  2. Plaintiff was diagnosed with "acute endophthalmitis.[3]" (ECF No. 92-13 at 135.)

  3. On August 25, a UC Davis ophthalmologist performed "cyclophotocoagulation," and "retrobulbar alcohol injection" to "treat interocular pressure and pain." Plaintiff was informed that if his condition did not improve, plaintiff might require an "enucleation.[4]" (ECF No. 92-13 at 145-148.)

---

[1] Where the undisputed facts are listed in defendants' statements of undisputed facts and admitted by plaintiff, this court does not cite to the supporting record. Where this court cites to undisputed facts not contained in defendants' lists, a record cite is included.

[2] Unless otherwise specified, all events described herein occurred in 2017.

[3] According to the American Academy of Ophthalmology ("AAO"), endophthalmitis is "an infection of the tissues or fluids inside the eyeball." https://www.aao.org/eye-health/diseases/what-is-endophthalmitis.

[4] Enucleation is the surgical removal of the entire eye. https://www.aao.org/eye-health/treatments/eye-removal-surgery-enucleation-evisceration.

7

4. Plaintiff was seen for a follow-up at UC Davis on August 27. An examination showed pain, discharge, and "visual disturbance." Plaintiff was diagnosed with "Endophthalmitis purulent" of the left eye. The UC Davis ophthalmologist informed plaintiff that an enucleation would likely be necessary in the near future. (ECF No. 92-13 at 94-103.)

5. On September 6, plaintiff was referred back to UC Davis for consideration of the enucleation procedure. Records show that the procedure was initially scheduled for September 12. (ECF No. 92-13 at 78, 87.)

6. On October 9, plaintiff had surgery for the enucleation of his left eye and the insertion an implant. (ECF No. 92-13 at 13.)

**A. Dr. Kirsch's Motion**

    **1. Undisputed Facts[5]**

- At all relevant times, Dr. Kirsch was employed as an optometrist at MCSP.
- As an optometrist, Dr. Kirsch conducted eye exams. He could refer an inmate to an ophthalmologist if he found it "medically necessary."
- As an optometrist, Dr. Kirsch did not have the authority to prescribe pain medication (except for ibuprofen), or order blood work and diagnostic tests such as x-rays and MRIs. These needed to be ordered by medical staff.
- Prior to June 2017, Dr. Kirsch had seen plaintiff two or three times and had prescribed glasses for him. At one of those prior visits, Kirsch was made aware that plaintiff previously had an infection in his left eye that had affected his vision.
- Dr. Kirsch saw plaintiff on June 14. At that visit, Dr. Kirsch ordered new glasses for plaintiff.
- Dr. Kirsch saw plaintiff on August 3. At that visit, Kirsch was made aware that plaintiff had "poked" his left eye. Kirsch advised plaintiff to take ibuprofen if he was experiencing pain.

---

[5] Dr. Kirsch filed objections to some of the evidence presented by plaintiff. (See ECF No. 95.) Because this court does not find any of the objected-to evidence material to the motions for summary judgment and does not consider that evidence here, this court need not consider those objections.

8

- Plaintiff picked up his glasses at the August 3 appointment.
- Between the June 14 appointment and plaintiff's admission to the UC Davis Medical Center on August 24, Dr. Kirsch never referred plaintiff to an ophthalmologist.
- Plaintiff filed a complaint about Dr. Kirsch's care with the Board of Optometry.[6] The Board filed an Accusation against Dr. Kirsch in which it alleged Kirsch "committed gross negligence, professional inefficiency, and a failure to maintain adequate records," in his care of plaintiff.
- The Board found that Dr. Kirsch's examination of plaintiff at the August 3 appointment did not constitute an "extreme departure from the standard of care.[7]"
- Regarding the August 3 appointment, the Board also found that Dr. Kirsch failed to take an adequate history of plaintiff's reported eye injury and failed to make "adequate and accurate records" of the examination.

////

////

////

---

[6] Plaintiff provided no response to Dr. Kirsch's statements of fact regarding the Board of Optometry proceedings. Accordingly, this court considers those facts undisputed for purposes of the present motion. Fed. R. Civ. P. 56(e)(2). The Board's Order of Decision is at ECF No. 88. Based on plaintiff's failure to object and because the document's accuracy as a record of the Board's Order "is not subject to reasonable dispute," defendant's motion for judicial notice of that exhibit will be granted. See Fed. R. Evid. 201(b). While plaintiff also provided no response to defendant's statements that he intended plaintiff no harm, because questions of intent involve issues of fact and law and go to the heart of plaintiff's Eighth Amendment claim, this court finds it is not appropriate to consider those facts undisputed. See Fed. R. Civ. P. 56(3)(4) (court may issue "any other appropriate order" if a party fails to address another party's assertion of fact); Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir.1999) ("Issues of credibility, including questions of intent, should be left to the jury." (citations omitted)).

[7] Defendant also states that the Board found his conduct at the June 14 appointment was "within the standard of care." That statement is not supported by the Board's decision. While both experts who provided opinions in the Board proceeding opined that defendant did not violate the standard of care at that June appointment, this court is unable to locate any conclusion by the Board to that effect. Rather, it appears that the Board rendered no specific conclusion regarding defendant's conduct at the June appointment. (See ECF No. 88 at 11-16.)

**2. Discussion of Dr. Kirsch's Motion for Summary Judgment**

Plaintiff provides evidence demonstrating that there are disputes of facts material to his claim that Dr. Kirsch was deliberately indifferent to plaintiff's serious eye problem when he failed to refer plaintiff to an ophthalmologist or otherwise treat plaintiff's eye.

Plaintiff alleges that he told Kirsch at both appointments that he had suffered an eye injury in early June and was experiencing pain and vision loss. Kirsch contends he was unaware of plaintiff's injury at the June 14 appointment and that, in any event, he conducted a full examination and found no problems with plaintiff's left eye besides some vision loss. With respect to the August 3 appointment, Kirsch states that he was told about plaintiff's eye injury and conducted an exam. He again states that he found no problems with plaintiff's eye.

The parties dispute what happened at the June 14 appointment. Whether or not Dr. Kirsch was aware of plaintiff's eye injury at that time is material to plaintiff's claim that Kirsch was deliberately indifferent to plaintiff's serious eye condition. While Kirsch claims he conducted a full exam and found nothing, even if that is true, he does not establish that knowledge of plaintiff's eye injury would not have caused him to conduct the exams in a different way.

Kirsch provides a copy of his post-visit notes from the June 14 appointment. (ECF No. 87-3 at 17.) They do not mention a discussion of plaintiff's eye injury. Kirsch argues that because plaintiff's position to the contrary is based only on plaintiff's unsupported assertion, plaintiff has not shown a legitimate dispute of fact.

However, plaintiff provides documentary evidence supporting his position that he and Kirsch discussed his eye injury on June 14. Plaintiff provides copies of three health care request forms dated after he saw Kirsch in June and before plaintiff saw him again in August. In the first two health care requests, plaintiff stated that Kirsch told him to come back in a month if his eye still hurt. (ECF No. 92-8 at 11-12.) In the third request, plaintiff complained that he still had not had a follow-up appointment with the optometrist and said his eye was still painful. (ECF No. 92-8 at 13.) Plaintiff's contention regarding the June appointment is also supported by copies of allegedly contemporaneous notes plaintiff took regarding his eye care. (ECF No. 92-8 at 4-8.) Finally, attached to plaintiff's spouse's declaration is a copy of a letter plaintiff wrote her. It is

dated June 14, 2017 and post-marked June 15, 2017.  (ECF No. 92-10 at 1-2.)  In that letter, plaintiff recounts that he and the optometrist discussed the eye injury he suffered "last week." (ECF No. 92-10 at 6.)  These exhibits are sufficient to create a dispute of fact about whether or not Kirsch was aware of plaintiff's eye injury at the June appointment.

With respect to the August 3 appointment, while the parties agree that Kirsch was informed about plaintiff's eye injury, they dispute just what Kirsch knew and did.  Kirsch contends his exam showed no damage to plaintiff's eye.  (ECF No. 87-3 at 21.)  However, as described below, Dr. Jackson saw plaintiff the previous day, August 2, and noted that plaintiff's eye was closed shut.  (See ECF No. 97-1 at 5 (undisputed fact no. 13 re Jackson and Martinez motion).)  The differences between Dr. Jackson's and Dr. Kirsch's description of plaintiff's eye is sufficient to create a question of material fact about the readily apparent condition of plaintiff's eye on August 3.

Kirsch also contends he conducted an examination from which he determined that no further testing was required.  Plaintiff contends Kirsch failed to conduct any examination.  Both agree that Kirsch's only recommendation at that visit was ibuprofen for pain.

Even if it the examination reflected in Kirsch's notes is not subject to reasonable dispute, and this court does not make that finding here, a dispute remains whether the examination Kirsch contends he performed was sufficient.  Kirsch points to the Board of Optometry's determination that Kirsch was not grossly negligent and did not violate the standard of care at the August 3 appointment.  Kirsch argues that the Board's determination resolves the question of deliberate indifference, a stricter standard than gross negligence.[8]  It does not for several reasons.

////

---

[8] In a somewhat contradictory argument, Dr. Kirsch also contends that the issue of whether he violated a medical "standard of care" is not relevant to the Eighth Amendment deliberate indifference standard.  Therefore, he continues, any expert testimony about his conduct would not aid plaintiff's case.  This court disagrees.  It is true that medical malpractice or negligence is not sufficient to meet the Eighth Amendment standard.  Toguchi, 391 F.3d at 1057.  However, those determinations could be a first step to a jury's consideration of the deliberate indifference question.  Accordingly, this court finds that the possibility of expert testimony regarding the reasonableness of Dr. Kirsch's conduct also weighs against any conclusion that Dr. Kirsch is entitled to summary judgment.

11

First, Kirsch points to no legal authority for the proposition that the Board's decision is binding on the legal question of deliberate indifference. Second, the Board's decision was based on a rejection of the opinion of one of the two experts who testified before it. One expert found Kirsch's conduct on August 3 was an "extreme departure from the standard of care." The other expert concluded that the examination Kirsch described was adequate. In this federal proceeding, the jury should make the factual and credibility determinations involved in considering any expert testimony. Third, the Board found that Kirsch failed to keep adequate records of what plaintiff told him about the eye injury and what his examination of plaintiff's eye revealed. That finding supports plaintiff's assertion that there are issues of fact regarding what happened at that August 3 visit. Finally, the Board's decision was based on a finding that Kirsch was unaware of plaintiff's eye injury until the August 3 appointment. However, as described above, there is a legitimate dispute about whether or not Kirsch was aware of the eye injury at the June appointment.

This court finds sufficient issues of fact regarding what Kirsch did and whether that conduct exhibited deliberate indifference to plaintiff's eye problem to defeat summary judgment.

### 3. Is Dr. Kirsch Entitled to Qualified Immunity?

Dr. Kirsch claims that he is protected by qualified immunity because: (1) he has demonstrated that plaintiff cannot succeed on the merits of his claim; and (2) a reasonable medical professional in his position would have believed his actions did not violate plaintiff's civil rights because he found no objective evidence of eye damage after performing various optometric evaluations of plaintiff's eye.

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in

sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

Dr. Kirsch's argument depends on a construction of the disputed facts in his favor. First, the parties dispute just what happened at the June and August appointments and whether the exams, if any, that Kirsch conducted were adequate if he was aware of plaintiff's eye injury. Considering the disputed facts in the light most favorable to plaintiff, Kirsch fails to show he will succeed on the merits. Further, Kirsch's argument that a reasonable optometrist would not have known his conduct violated plaintiff's rights is based on the assumption that Kirsch's testing was appropriate, an opinion based on disputed facts. Dr. Kirsch is not entitled to summary judgment on the question of qualified immunity.

### B. Nurse Martinez's Motion

Plaintiff contends he saw Martinez on June 6, the day after he suffered the eye injury. Martinez told him it did not appear to be an emergency and he could wait until his previously scheduled optometrist appointment on June 14. Plaintiff contends he saw Martinez two additional times regarding the eye injury – on June 21 and on August 22 – before he was taken to the UC Davis Medical Center on August 24. At each visit, Martinez determined plaintiff's eye problem was not an emergency and referred plaintiff to optometry. Martinez responded similarly to an emergency appeal plaintiff submitted on July 17 in which he requested an appointment with an ophthalmologist. Plaintiff argues that Martinez was deliberately indifferent when she failed to treat his eye condition as an emergency and failed to refer him to an ophthalmologist

#### 1. Undisputed Facts re Nurse Martinez's Motion

- At all relevant times, Martinez was employed as a registered nurse at MCSP.
- Plaintiff submitted a health care request form on July 19 in which he said he accidentally poked himself in the left eye on June 5 and had been experiencing pain and loss of vision since then.

13

1    • Nurse Martinez reviewed the healthcare request form and had a medical
2       consultation with plaintiff on July 21. She took a history of plaintiff's subjective
3       complaints, during which he told her his pain was a 7 out of 10, and was
4       exacerbated by moving his left eye. He stated that darkness relieved his pain.
5    • At the July 21 visit, Nurse Martinez referred plaintiff to optometry.
6    • Martinez saw plaintiff on August 22 due to plaintiff's complaints of left eye pain
7       and loss of vision. She again referred plaintiff to optometry.

**2. Discussion**

The parties dispute whether Martinez examined plaintiff's eye at the July 21 and August 22 appointments and the condition of his eye at each appointment. Plaintiff also disputes Martinez's contention that on August 22 plaintiff said his eye pain was improved.

Martinez contends that because her version of each visit is supported by her written notes, plaintiff's contrary, unsupported version should not be credited. Martinez's notes from both visits state that she conducted exams and saw no abnormalities with plaintiff's left eye. (ECF No. 90-2 at 19, 36.) With respect to the July visit, plaintiff contends that his eye was visibly swollen and bruised. Contrary to Martinez's assertion that plaintiff provides no evidence to support his contention, plaintiff provides declarations from a friend and his spouse who visited him on July 16. Both state that plaintiff's eye was swollen and bruised at that time. (ECF Nos. 93-3, 93-4.) These third-party descriptions of the condition of plaintiff's eye just a few days before the July 21 appointment, are sufficient support for plaintiff's description of the condition of his eye at that time to create a legitimate dispute of fact.

With respect to the August 22 visit, the parties dispute what plaintiff told Martinez about his level of pain. In addition, plaintiff disputes Martinez's statement that she saw no abnormality of plaintiff's left eye at that time. Just two days after Martinez saw plaintiff on August 22, plaintiff's eye was observed to be severely red, closed shut, and cloudy. He was taken by ambulance to UC Davis Medical Center and diagnosed with an acute eye infection. The proximity in time between the August 22 visit with Nurse Martinez and the August 24 observations of plaintiff's eye, create an issue of material fact about the condition of plaintiff's

eye at the August 22 visit and whether Martinez's conduct exhibited deliberate indifference to plaintiff's medical needs.

Nurse Martinez's assertion of qualified immunity is based on an incorrect interpretation of plaintiff's claim. Nurse Martinez simply states that she could not have known she violated plaintiff's rights when she was "unable to diagnose an alleged eye injury." Plaintiff is not alleging Martinez should have diagnosed his injury. He alleges only that she was deliberately indifferent when she did not treat his injury and symptoms with sufficient care and urgency. Because what Martinez knew and did when she saw plaintiff is in dispute, summary judgment on the issue of qualified immunity should be denied as well.

**C. Dr. Jackson's Motion**

Plaintiff alleges he saw Dr. Jackson on June 14 after he had seen the optometrist, and again on July 21, August 2, and August 11. At each visit, according to plaintiff, Jackson was informed about plaintiff's eye problems but he did not examine plaintiff's eye and did not refer plaintiff to an ophthalmologist. Rather, Dr. Jackson deferred to the optometrist.

**1. Undisputed Facts**

- Plaintiff saw Dr. Jackson on August 2. Plaintiff told Jackson that he could only see centrally, and not peripherally, from his left eye. Plaintiff's left eye was closed shut. Jackson did not make any recommendations for the care of plaintiff's eye.
- Plaintiff saw Dr. Jackson on August 11. He complained of pain in his left eye.
- At no point between June 14 and August 24 when plaintiff was taken to UC Davis did Jackson refer plaintiff to an ophthalmologist.

**2. Discussion**

Again, there is a dispute about just what Jackson was told at each visit and whether his conduct exhibited deliberate indifference to plaintiff's serious medical need. The court also notes that while Jackson contends his description of the August 2 visit is supported by written notes (see ECF No. 97-1 at 5), he cites only to his deposition testimony as support for his description of that visit (see ECF No. 89-1 at 3). Accordingly, his argument, like those made by the other defendants, that his version of the visit is supported while plaintiff's is not, is baseless. Because

15

1 what Dr. Jackson knew and what he did is in dispute, there are issues of material fact regarding

2 his care of plaintiff and his motion for summary judgment should be denied on the merits.

3       Jackson's qualified immunity argument should also fail at this juncture. Like Nurse

4 Martinez's argument, it assumes plaintiff is claiming that Jackson should have diagnosed

5 plaintiff's condition. (See ECF No. 89 at 9 ("Dr. Jackson could not have known that [he] would

6 violate Plaintiff's constitutional rights because [he was] unable to diagnose an alleged eye

7 injury.").) A failure to diagnose is not the issue raised by plaintiff. Rather, plaintiff argues that

8 Dr. Jackson should have recognized, through exams or otherwise, that plaintiff required the

9 attention of an eye specialist with a medical degree.

10 **IV. Conclusion**

11       Plaintiff has sufficiently shown there are issues of material fact regarding what each

12 defendant knew and observed about plaintiff's left eye injury at each visit between June 6 and

13 August 24. Further, plaintiff's shows there are issues of fact regarding what sort of exams, if any,

14 each defendant conducted at those visits and whether those exams were adequate. Resolution of

15 all of these factual issues is necessary to a jury's determination whether each defendant was

16 deliberately indifferent to plaintiff's eye condition. Each defendant's motion for summary

17 judgment should be denied.

18       For the foregoing reasons, IT IS HEREBY ORDERED that defendant Kirsch's Request

19 for Judicial Notice (ECF No. 88) is granted;

20       Further, IT IS RECOMMENDED that:

21       1. Defendant Kirsch's Motion for Summary Judgment (ECF No. 87) be denied; and

22       2. Defendants Jackson and Martinez's Motion for Summary Judgment (ECF No. 89) be

23 denied.

24       These findings and recommendations will be submitted to the United States District Judge

25 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

26 after being served with these findings and recommendations, either party may file written

27 objections with the court. The document should be captioned "Objections to Magistrate Judge's

28 Findings and Recommendations." The parties are advised that failure to file objections within the

1    specified time may result in waiver of the right to appeal the district court's order. Martinez v.

2    Ylst, 951 F.2d 1153 (9th Cir. 1991).

3    Dated: February 11, 2022

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

22    DLB:9
DB Prisoner Inbox/Civil Rights/S/kren0690.msjs fr